HERBERT LAW GROUP, LLC
John T. Herbert, Esq.
Attorney ID: 002291975
96 Engle Street
Englewood, New Jersey 07631
Office: (201) 490-4070
Facsimile: (201) 490-4077
jherbert@herbertlawllc.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Newark Division)

| RAQUEL JAMES-GOODMAN,<br><br>Plaintiff,<br>v.<br><br>HACKENSACK BOARD OF EDUCATION AND JOHN/JANE DOES A THROUGH D,<br><br>Defendants. | Civil Action No.:<br><br>COMPLAINT |
| --- | --- |

COMES NOW PLAINTIFF RAQUEL JAMES-GOODMAN by and through her attorneys, Herbert Law Group LLC, hereby files this Complaint and cause of action against DEFENDANTS HACKENSACK BOARD OF EDUCATION AND JOHN/JANE DOES A THROUGH D, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Raquel James-Goodman is an adult, African-American female and a citizen of the United States of America and a resident of the State of New Jersey, who currently resides in the City of Hackensack, County of Bergen.

2. Hackensack Board of Education (referred to herein as "Defendant") at all times herein mentioned is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 191 Second Street, in the City of Hackensack, County of Bergen, State of New Jersey

3. At all times pertinent to this Complaint, Plaintiff was an "employee" of Defendant and worked primarily at Defendant's Middle School located at 360 Union Street, in Hackensack, in the County of Bergen, within the meaning of 29 U.S.C. Section 630(f) and Section 10:5-5(5)(f) of the New Jersey Law Against Discrimination ("LAD").

4. During her employment, Plaintiff was an English and Language Arts teacher.

5. Defendant operates six (6) public schools, including four (4) Elementary Schools (grades Pre-K-4), one (1) Middle School (grades 5-8) and one (1) High School (grades 9-12), providing academic services. Defendant employs more than 100 employees.

6. At all times relevant to this lawsuit, Defendant was and is a "person" and an "employer" within the meaning of 29 U.S.C. Sections 630(a) and (b) and Sections 10:55(5)(a) and (b) of the LAD. At all times relevant to this lawsuit, Plaintiff was a regular full-time employee of Defendant.

7. Defendants John and Jane Does A-D are fictitious names; Plaintiff hereby reserves her right to amend the Complaint as a result of pleading fictious parties. John and Jane Does A-D are individuals that may have discriminated against Plaintiff, but they are as yet unknown.

## JURISDICTION

8. Because Plaintiff asserts racial discrimination claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), this Court has jurisdiction over this controversy, the authority to empanel a jury to decide its facts, and the authority to order any and all appropriate legal and equitable relief for any violations of law found. Title 28 U.S.C. Section 1367(a) grants this Court jurisdiction to adjudicate Plaintiffs claims arising under the LAD and Plaintiff hereby requests that the Court so assert this jurisdiction.

## VENUE

9. Pursuant to 28 USC Section 1391(b) (2) and the LAD, venue is proper in this Court because all of the events giving rise to Plaintiff's claims occurred in this Judicial District.

## PROCEDURAL HISTORY

10. On July 1, 2020, Plaintiff completed an Equal Employment Opportunity Commission ("EEOC") Charge ("Charge") and submitted it to the Director of the New Jersey District Office.

11. The Charge alleged racial discrimination and retaliation.

12. On August 24, 2020, the EEOC issued a Right to Sue Notice.

13. Plaintiff has filed this lawsuit within ninety (90) days of receiving the Right to Sue Notice.

## STATEMENT OF FACTS

14. Plaintiff had been employed with Defendant for approximately thirteen (13) years, since September 2007.

15. Plaintiff is an African-American female.

16. Plaintiff had been working at Defendant's Middle School located at 360 Union Street in Hackensack, New Jersey.

17. During her employment, Plaintiff exhibited exemplary performance.

18. On or about April 9, 2019, Plaintiff spoke to Vice Principal Adi Madden, a Caucasian female, about her concerns with respect to racial bias regarding the selection of faculty members chosen to proctor the New Jersey Student Learning Assessment ("NJSLA") and those that were floaters.

19. Ms. Madden discussed Plaintiff's concerns of the pervasive atmosphere of unconscious bias that was reflected by the lack of diversity of faculty members chosen but dismissed the idea that Plaintiff's identity was a factor in Ms. Madden's decision when choosing test proctors. Ms. Madden felt attacked and offended that Plaintiff could think her race had anything to do with the decision. She stated that she was colorblind and could not please everyone, but appreciated the fact that Plaintiff brought her concerns to Ms. Madden's attention rather than make the same claims of racism behind her back like other colleagues.

20. After Plaintiff's attempts to speak with Ms. Madden, her interactions with her peers substantially changed.

21. On or about April 10, 2019, several Caucasian staff members that normally engaged in workplace conversations with Plaintiff stopped socializing with and talking to her, except when professionally necessary.

22. Specifically, Plaintiff and numerous African American and Latinx professionals were excluded from a baby shower of a Caucasian teacher, which was being organized by Ms. Madden and other Caucasian colleagues. In addition, Plaintiff noticed that Caucasian colleagues have baby showers and are provided resources not made available to African American and

Latinx employees. For example, Caucasian colleagues often have activities planned, promoted and/or attended by administrators, with invitations routinely sent to only Caucasian colleagues.

23. This was not the first baby shower Plaintiff had been excluded from, but it was the first one she had direct knowledge of. After being excluded from the baby shower, Plaintiff sent an email to Ms. Madden, recommending that all employees be celebrated equally. Ms. Madden responded but effectively ignored the concerns and suggestions made by Plaintiff.

24. Following Plaintiff's effort to speak to Ms. Madden, Plaintiff was approached by Damen Cooper, the newly appointed principal. During their conversation, Mr. Cooper and Plaintiff spoke extensively about the race and ethnic based concerns and disparities in the building, as well as the retaliation Plaintiff was experiencing.

25. On or about April 14, 2019, during an Educational Development Unit, the topic of "make believe" racial tension in Plaintiff's building was brought up. During the heated discussion, Plaintiff's concerns, that she had only shared with Ms. Madden, were publicly mocked and deemed illegitimate by a colleague, Andrea Kosoy. Ms. Kosoy, a colleague that Plaintiff had never spoken to about her concerns, was able to share specific details about Plaintiff's complaints to Ms. Madden.

26. Plaintiff was publicly harassed by this colleague and publicly humiliated over a matter that should not have been discussed with her colleagues.

27. On or about June 14, 2019, Plaintiff filed a grievance regarding the discriminatory acts and hostile work environment. The retaliation increased thereafter.

28. Plaintiff was excluded from the Teacher of Year nominees and had no opportunity to vote, resulting in the failure to nominate deserving minority candidates.

29. Plaintiff was excluded from committees that were organized to improve education and affirmative action in favor of those colleagues who may have had a bias toward reaching appropriate affirmative action goals and was excluded from the communication about the formation of these committees.

30. In or around June 2019, Plaintiff made a formal complaint to Defendant regarding her exclusion from work committees and meetings, segregated work-related social gatherings, hostile working environment and increased workload.

31. Defendant failed to follow up on the affirmative action complaint.

32. Plaintiff filed a second affirmative action complaint in or around October 2019 after an African American student with special needs was abruptly placed in Plaintiff's classroom, in an effort to relieve Jennifer Giammona, a Caucasian teacher.

33. Defendant again failed to follow procedure, alleging that the complaint had been addressed.

34. In or around June 2020, Plaintiff filed a formal complaint and requested an impartial 3rd party be retained to investigate the matter. On or about August 11, 2020, Plaintiff was advised by Souder, Shabazz & Woolridge Law Group, LLP, that their firm had been retained to investigate the complaint. To date, the investigation is ongoing.

35. After years of enduring the unlawful harassment and discrimination, Plaintiff was left no choice but to resign from Defendant's employment, effective June 16, 2020.

## COUNT ONE
## RACE DISCRIMINATION UNDER THE TITLE VII of the CIVIL RIGHTS ACT OF 1964

36. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-35 as though fully set forth herein.

37. By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful employment discrimination against Plaintiff on account of her race in violation of Title VII. Defendant treated Caucasian employees, similarly situated, more favorably than Plaintiff.

38. Specifically, Jennifer Giammona, a Caucasian teacher. Ms. Giammona was having difficulty with an African American student with special needs and instead of addressing ways to assist Ms. Giammona and the student, the student was abruptly placed in Plaintiff's classroom, in an effort to relieve Ms. Giammona.

39. As a direct and proximate result of the extreme, outrageous, malicious, willful and reckless conduct of Defendant, Plaintiff has suffered lost earnings and benefits along with emotional distress, pain and anguish.

**COUNT TWO**
**RACE DISCRIMINATION UNDER THE**
**NEW JERSEY LAW AGAINST DISCRIMINATION**

40. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-39 as though fully set forth herein.

41. By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful employment discrimination against Plaintiff on account of her race in violation of the LAD. Defendant treated Caucasian employees, similarly situated, more favorably than Plaintiff.

42. Specifically, Jennifer Giammona, a Caucasian teacher. Ms. Giammona was having difficulty with an African American student with special needs and instead of addressing ways to assist Ms. Giammona and the student, the student was abruptly placed in Plaintiff's classroom, in an effort to relieve Ms. Giammona.

43. As a direct and proximate result of the extreme, outrageous, malicious, willful and reckless conduct of Defendant, Plaintiff has suffered lost earnings and benefits along with emotional distress, pain and anguish.

## COUNT THREE
## RETALIATION

44. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1-43 as though fully set forth herein.

45. By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful retaliation against Plaintiff for making numerous complaints of the race-based discrimination and harassment that was pervasive throughout Defendant's district.

46. As a direct and proximate result of the extreme, outrageous, malicious, willful and reckless conduct of Defendant, Plaintiff has suffered lost earnings and benefits along with emotional distress, pain and anguish.

## COMPENSATORY DAMAGES AND RELIEF REQUESTED

24. Plaintiff re-alleges all previous Paragraphs as though fully set forth herein.

25. All of Defendant's acts of unlawful discrimination against Plaintiff were intentional, willful, and in reckless disregard of Plaintiff's legal rights and legitimate interests as a citizen of the United States and a resident of the State of New Jersey and as a person who is entitled to the protections of these laws.

26. The effect of Defendant's unlawful racial discrimination practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her life and status as an employee of Defendant.

27. As a direct result of Defendant's willful, wrongful, and unlawful acts in discriminating against Plaintiff on the basis of her race, Plaintiff has suffered severe emotional

distress, depression, humiliation, embarrassment, and impaired self-esteem, and has sustained loss of income, loss of various fringe benefits, and the diminution of her future earning power.

28. All of Defendant's unlawful acts committed against Plaintiff (that is, all harm inflicted on Plaintiff through affirmative acts rather than through negligence) were intentional, hostile, egregious, extreme, and outrageous, and were committed with malicious, willful, and/or reckless indifference to Plaintiff's rights under federal and state law.

29. As a direct and proximate result of the extreme, outrageous, intentional, hostile, malicious, willful, and reckless conduct of Defendant, Plaintiff has suffered severe emotional distress, pain, and anguish.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the Court grant the following relief:

A. Order Defendant to compensate Plaintiff for her damages in an amount to be proven at trial, and that such relief entail all forms, legal and/or equitable, recoverable under Title VII and under the LAD including, but not limited to: front pay with prejudgment interest in an amount to be determined at trial, back pay, compensation for lost benefits and seniority, emotional distress, pain, suffering, and humiliation, punitive damages, attorneys' fees, expert witness fees, if applicable, and the costs of bringing this action, together with any applicable pre- and post-judgment interest.

B. Order Defendant to compensate Plaintiff for punitive damages.

**JURY DEMAND**

Plaintiff requests a trial by jury on all Counts.

Respectfully submitted,

*/s/ John T. Herbert* November 23, 2020

______________________________ ________________________

John T. Herbert, Esq. Date
Attorneys for Plaintiff